UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DWIGHT HILL,

                Plaintiff,                Case No. 1:20-cv-542

v.                                     Honorable Robert J. Jonker

RICKEY J. COLEMAN et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Davids. The Court will also dismiss Plaintiff's retaliation claims against Defendant Doolittle.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The

events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues Corizon employees Rickey J. Coleman, M.D., Keith Papendick, M.D., MDOC Chief Medical Officer Unknown McIntyer,[1] M.D., Assistant Chief Medical Officer Unknown Blessman, M.D., Physician's Assistant David Huyge, Unknown Doolittle, R.N., and ICF Warden J. Davids.

Plaintiff alleges that he suffers from severe hemorrhoids that burst and bleed whenever he has a bowel movement, and that he requires wet wipes to clean the blood and fecal matter from between his hemorrhoids following a bowel movement. Plaintiff complains of severe pain, which lasts several hours following each bowel movement. Plaintiff states that he has suffered with this condition for the past five years and that topical creams, ointments, stool softeners, and suppositories have failed to adequately treat his condition.

Plaintiff states that his wet wipes detail was discontinued at some point and that Defendants Coleman, Papendick, McIntyer, Blessmen, and Huyge have all denied his requests to renew the detail. Plaintiff states that his hemorrhoids become extremely thrombosed and swollen in the hours immediately prior to and following a bowel movement. Plaintiff explained this to medical personnel, but they refused to verify this by examining him during this time period. Plaintiff alleges that, having not examined Plaintiff, on November 29, 2018, Defendant Coleman denied a request by Physician's Assistant Jindal to renew Plaintiff's wet wipes detail, despite the fact that the directions on the Preparation H state that the area should be cleaned with a wet wipe prior to application of the product. Plaintiff also sent requests for wet wipes and for surgery to

---

[1] Plaintiff refers to this Defendant alternatively by the surname "McIntyre." (*See, e.g.*, Compl., ECF No. 1, PageID.2.) For the purposes of this opinion, the Court will use the spelling, "McIntyer" because it is the first used spelling in the complaint. (*See id.*, PageID.1.)

Defendants Coleman, Papendick, McIntyer, and Blessmen on October 9, 2019, but received no response.

Plaintiff alleges that his requests for surgery have not only gone unanswered, they have also been denied. On September 6, 2018, Defendant Papendick denied Plaintiff's request for out-patient surgery to remove his hemorrhoids. Plaintiff claims that nearly a year later, on September 2, 2019, his hemorrhoids bled so heavily that he was taken to the emergency room. Dr. Mary A. Greiner recommended that Plaintiff have a hemorrhoidectomy, but Defendant Papendick denied the request for surgery. Plaintiff states that he has made multiple requests for a surgical referral, but has been denied each time. Plaintiff was told that the reason for the denial was that insurance rates would go up.

On November 22, 2019, while Plaintiff was having a bowel movement, he suffered a burst hemorrhoid. When the bleeding continued for twenty minutes, Plaintiff called for medical assistance. Defendant Doolittle and LPN Tribble arrived and Defendant Doolittle immediately began yelling that Plaintiff needed to fill out a kite so that he could be charged for the visit. Plaintiff yelled that he was bleeding all over the place and was in pain. Defendant Doolittle said she did not think that it was an emergency, and Plaintiff called her stupid. Defendant Doolittle then told Plaintiff that if he said one more thing he could go back to his cell. Defendant Doolittle then used a piece of dry gauze to push hard on Plaintiff's hemorrhoids and to wipe up the blood. Plaintiff yelled in pain and said that she was supposed to pat the area, not wipe. Defendant Doolittle told Plaintiff to pull up his pants. LPN Tribble asked Defendant Doolittle if she wanted some spray-on pain reliever, but Defendant Doolittle waved her away. Plaintiff returned to his cell and sat on the toilet because he was still bleeding. When Defendant Doolittle came by his cell and saw that he was still bleeding, she stated that she would give him some pads to "plug his butt hole." Plaintiff

3

was later given a large bag of incontinence pads. Plaintiff believes that this was done to belittle him since he does not have incontinence issues.

Plaintiff filed a PREA grievance on Defendant Doolittle asserting sexual assault and sexual harassment. Plaintiff claims that he was transferred from ICF to MBP on January 7, 2020, in retaliation for his PREA grievance. Plaintiff states that Defendant Davids failed to respond to the step II appeal of the grievance denial and failed to review video footage of the assault by Defendant Doolittle.

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.     Eighth Amendment

Plaintiff claims that Defendants Coleman, Papendick, McIntyer, Blessman, Huyge, and Doolittle violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In

5

other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cty.*, 534 F.3d 531, 540 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Cty. Of Saginaw*, 749 F.3d 437, 466, 451 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006);

7

*Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

In support of his claims, Plaintiff attaches copies of grievances, appeals, and responses, as well as health care kites and responses to his complaint. The Court carefully reviewed these attachments in considering Plaintiff's claims.

A review of the record reveals that Plaintiff had a physical examination on September 6, 2018, which showed external hemorrhoids around the entire anus, which were enlarged and tender. (ECF No. 1-3, PageID.34.) On December 11, 2018, Plaintiff was seen by nurse Shawn M. Coutts, RN, for "popping a hemorrhoid and bleeding." *Id.* at PageID.36. An external examination revealed large and clustered hemorrhoids. Plaintiff was given Preparation H and was educated on alleviating hemorrhoid discomfort, including counter pressure on the tailbone, diet, weight control, cleaning by patting dry, and the avoidance of using soap or a wiping motion after a bowel movement. *Id.* Plaintiff tried counter pressure with relief and verbalized understanding of instructions. *Id.*

In a step I grievance response dated April 16, 2019, Plaintiff complained about the denial of his request for surgery. (ECF No. 1-6, PageID.89.) The investigation summary indicated that Plaintiff's medical records had been reviewed, that he had been evaluated by the medical

provider on April 11, 2019, and had been given a plan of care which did not include a referral for surgery. Plaintiff was instructed to follow the plan of care. *Id.*

While at the emergency room on September 2, 2019, Dr. Lisa M. Bergsma noted that Plaintiff's blood counts were reassuring, but that his hemorrhoids might need further surgical intervention which could not be done at the emergency department. (ECF No. 1-2, PageID.29.) Plaintiff was instructed to take colace or another stool softener and to eat a high fiber diet with lots of liquids. *Id.* Dr. Bergsma also stated that sitz baths might be helpful until Plaintiff could receive follow up care. *Id.* Upon Plaintiff's return to ICF, Nurse Ericka C. VanNortrick, R.N. noted that the hospital had sprayed Plaintiff's hemorrhoids with lidocaine 4% external solution and suggested that Plaintiff be placed on colace or another stool softener. (*Id.* at PageID.31.) Plaintiff was encouraged to drink more water and was placed on callout for follow up the next morning. *Id.*

As noted above, Defendant Papendick denied Plaintiff's request for out-patient surgery to remove his hemorrhoids on September 6, 2018, because it would cause insurance rates to go up, despite Dr. Greiner's recommendation that Plaintiff have a hemorrhoidectomy. Plaintiff filed a grievance regarding the October 9, 2019, denial of wet wipes by Defendants Coleman, Papendick, McIntyer, and Blessman, which was denied on December 28, 2018. (ECF No. 1-5, PageID.52.) In the response, nurse C. Nethercott, RN, stated:

> The issue presented in this grievance has been reviewed by healthcare staff. The prisoner requested a renewal of his previous wet wipes medical detail on 11/05/2018 and was informed that Assistant Chief Medical Officer (ACMO) approval was denied in July and would not be renewed. The prisoner repeated his request on 11/08/2018 and was evaluated by Registered Nurse (RN) on 11/12/2018 with a note sent to the Medical Provider (MP) about the size and status of the hemorrhoids. The prisoner repeated his request on 11/29/2018 that was forwarded to the MP who made another ACMO approval request. This request was denied by the ACMO. Inmate placed another request in on 12/12/2018 and was informed that the request had been denied twice. The prisoner's disagreement with the decisions of the RN, MP, or ACMO does not warrant a denial of medical care claim.

9

*Id.* at PageID.52. Plaintiff's step III grievance appeal regarding the discontinuation of his wet wipes detail was denied on March 26, 2019, by Richard D. Russell, Manager of the Grievance Section of the MDOC Office of Legal Affairs. *Id.* at PageID.49.

Plaintiff filed another grievance regarding a denial of his wet wipes on April 11, 2019. This grievance was denied on April 16, 2019, by JoAnn Bunting RN. The response indicated that a chart review had been completed by the ACMO, who had determined that wet wipes were not medically indicated at this time. *Id.* at PageID.64. In his grievance, Plaintiff stated that prior to his evaluation, the MP told him that a request for wet wipes would not be made to the ACMO. Plaintiff complained that he could not clean between his grape sized hemorrhoids with either toilet paper or a towel, and that he had to sit on the toilet for several hours before the swelling of his hemorrhoids went down enough to allow him to clean himself. Plaintiff further stated that even after the swelling went down, fissures still reopened and caused bleeding. *Id.* at PageID.59. The summary of step II investigation states that Plaintiff's electronic health records had been investigated, that Plaintiff had two small external hemorrhoids, and that there was no medical indication for wet wipes. *Id.*

Plaintiff filed a grievance regarding the April 11, 2019, denial of surgery. *Id*. at PageID.78. Plaintiff stated that Defendant Huyge had told him that he would not put in a surgical request to the ACMO because of insurance issues. *Id.* Plaintiff filed a step II appeal, asserting that topical ointments and creams were not working and that he suffered severe pain for up to three hours after each bowel movement. Plaintiff stated that if he did not receive surgery, he would continue to suffer in this manner. *Id.* at PageID.75. The summary of step II investigation in the grievance appeal response stated that Plaintiff's electronic health records had been reviewed and that Plaintiff had been examined by the medical provider. *Id.* The summary further stated that

10

Plaintiff had been prescribed Preparation H and that surgery was not medically indicated. *Id.* Plaintiff's step III grievance appeal was denied on June 19, 2019, by Richard D. Russell, who stated that Plaintiff's disagreement with the treatment plan did not constitute a denial of care. *Id.* at PageID.73.

As noted above, Plaintiff claims that Defendant Doolittle assaulted him on November 22, 2019. A medical kite response by Defendant Doolittle dated November 22, 2019, stated that she had spoken to the onsite P.A. regarding Plaintiff's hemorrhoids and, as she had told Plaintiff during the visit, it is not uncommon for hemorrhoids to bleed. (ECF No. 1-4, PageID.39.) Plaintiff was advised to wear underwear so that his pants did not rub on the hemorrhoid. *Id.* Defendant Doolittle indicated that she was sending out education on hemorrhoids and "TENA for men" pads to help protect Plaintiff's clothing. *Id.* Plaintiff was also told that he had an upcoming appointment with his provider. *Id.*

Plaintiff filed a PREA grievance on Defendant Doolittle asserting sexual assault and sexual harassment. In the grievance, Plaintiff asserted that Defendant Doolittle had threatened to send him back to his cell if he continued speaking, that she was extremely angry while treating him, and that she hurt Plaintiff by roughly pushing on his hemorrhoid and wiping it with dry gauze. Plaintiff asserts that the movements were purposeful and angry and caused him to suffer severe pain. (ECF No. 1-5, PageID.47-48.)

In the step II appeal, Plaintiff stated that during the examination, Defendant Doolittle instructed him to "drop his pants" without using a privacy screen and that the windows to the day room allowed a clear view to the area where Plaintiff was being examined. (ECF No. 1-5, PageID.43.) Plaintiff also stated that video footage, which had not been reviewed, would clearly show that Defendant Doolittle was angry while treating him, which caused her to assault

11

Plaintiff. *Id.* at PageID.44. Plaintiff requested a step III appeal form on December 10, 2019, stating that he had not received a step II response. *Id.* at PageID.45. In a memorandum dated December 2, 2019, Inspector Cassel informed Plaintiff that his PREA grievance was being denied because it contained issues other than sexual abuse/harassment. (ECF No. 1-5, PageID.41.)

Plaintiff also filed an administrative grievance asserting that Defendant Doolittle had assaulted him on November 22, 2019. (ECF No. 1-6, PageID.103.) The step I grievance response states:

> The electronic medical record (EMR) has been reviewed. RN Doolittle and LPN Tribble were interviewed. On 11/22/19 the grievant was seen by RN Doolittle for complaint of bleeding hemorrhoids. The grievant was stating that he needed to go to the ER and began making demeaning remarks to the nurses that were there to do the assessment. Custody intervened and warned the grievant that his behavior could prevent the visit from continuing. An exam was completed with x 2 nurses present and the area was cleansed to allow visualization of the affected area. The bleeding had stopped and the grievant was given education regarding self care and to continue current treatment.

*Id.* at PageID.104. Plaintiff's step II appeal was denied because his allegations were not substantiated by the electronic health record. *Id.* at PageID.100. Plaintiff's step III appeal was rejected as untimely. *Id.* at PageID.98.

On September 26, 2019, Plaintiff filed a step I grievance asserting that he was denied copies of the ER evaluation and after care instructions completed by Dr. Bergsma on September 2, 2019. *Id.* at PageID.112. The step I response indicated that Plaintiff had received the information that had been kept, but that health information records did not keep generic discharge instructions in the patient record. *Id.* at PageID.113. Plaintiff filed a step II appeal, which was denied on October 29, 2019:

> Upon investigation of the Step II appeal; the Step I response, reason for appeal, the Electronic Health Record (EHR), and policies were all reviewed, including any additional information needed was obtained as necessary to complete the response. Mr. Hill, as it pertains to the "report from E. Trevor at ICF Healthcare also requested," please follow policy to obtain this if you would like a copy of the

> encounter, you are to follow OP 03.04.108B Prisoner Access to Medical Records A) *Accepted community practice provides patients with copies of their health records on a fee-for-service basis. This same consideration shall be provided to prisoners in the Michigan Department of Corrections. Prisoners may obtain a copy of their medical record with proper authorization and payment. . .*
>
> Mr. Hill, if you feel a hemorrhoidectomy is medically indicated, please discuss this with your Medical Provider, as they oversee your treatment plan. Per PD 03.04.100 Health Services <u>OUTSIDE HEALTH SERVICES AT PRISONER'S EXPENSE</u>; MM. The outside QHP shall be viewed as a consultant only. Responsibility for the case management of a prisoner rests with BHCS. Grievance is currently denied.

*Id.* at PageID.109. Plaintiff's step III appeal was denied on December 17, 2019. *Id.* at PageID.107.

After careful review of Plaintiff's allegations and his attachments, the Court concludes that he has alleged sufficient facts to support his claims that the denial of surgery and wet wipes by Defendants Coleman, Papendick, McIntyer, Blessman, and Huyge violated the Eighth Amendment. Although it is clear that Plaintiff received a significant amount of medical attention while at ICF, the Court notes that:

> [P]rison officials may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment. Indeed, deliberate indifference may be established in cases where it can be shown that a defendant rendered "grossly inadequate care" or made a "decision to take an easier but less efficacious course of treatment."

*Jones v. Muskegon Cnty.*, 625 F.3d 935, 944-45 (6th Cir. 2010) (citations omitted). Plaintiff alleges that he had been on conservative treatment for his hemorrhoids for an extended period of time, but was still suffering severe pain and bleeding each time he had a bowel movement. Plaintiff also alleges that Defendants were aware of his condition but disregarded it because of a desire to save money. Plaintiff alleges sufficient facts to show that Defendants acted with deliberate indifference to Plaintiff's serious medical needs. Therefore, the Court will not dismiss these claims on initial review.

With regard to Plaintiff's claim that Defendant Doolittle assaulted him during an examination, the Court notes that not "every malevolent touch by a prison guard gives rise to a[n

13

Eighth Amendment] cause of action." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, in *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), the Supreme Court held that significant injury is not a threshold requirement for an excessive force claim. Instead, the "'core judicial inquiry' [is not] the extent of the injury," but "whether [the force used] was nontrivial and "was applied . . . maliciously and sadistically to cause harm.'" *Id.* at 39 (quoting *Hudson*, 503 U.S. at 7). As a result, an excessive force claim should not be dismissed on the basis that the Plaintiff's injuries were *de minimis*." *Id.* at 39. Plaintiff alleges that Defendant Doolittle harshly wiped his hemorrhoids with a piece of dry gauze in a manner that was maliciously intended to cause harm. Although Plaintiff's excessive force claim against Defendant Doolittle is a closer call than the deliberate indifference claims detailed above, Defendant Doolittle's role as a medical professional implies that she had knowledge and expertise regarding Plaintiff's specific medical condition. Therefore, Defendant Doolittle is presumed to have known that her actions would cause Plaintiff unnecessary pain. Therefore, Plaintiff's Eighth Amendment claim against Defendant Doolittle may not be dismissed on initial review.

## IV.   Due process

Plaintiff states that Defendant Davids violated his Fourteenth Amendment due process rights when he failed to respond to his step II appeal of the denial of the PREA grievance, and failed to review video footage of the assault by Defendant Doolittle. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams*

14

*v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant David's handling of the PREA grievance did not deprive him of due process.

**V.      Retaliation**

Plaintiff asserts that Defendant Doolittle retaliated against him for filing repeated kites by assaulting him during an examination. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In his complaint, Plaintiff concedes that he called Defendant Doolittle stupid and that she responded by warning Plaintiff against continuing to talk and by using a piece of dry gauze to push hard on Plaintiff's hemorrhoids and to wipe up the blood in a manner designed to cause him pain. Plaintiff does not allege any facts in support of his claim that the alleged assault was in retaliation for submitting kites. In fact, Plaintiff states that Defendant Doolittle yelled at him for not submitting a kite so he could be billed. Because Plaintiff does not allege facts showing that

Defendant Doolittle's conduct was motivated by a desire to retaliate against Plaintiff for constitutionally protected conduct, this retaliation claim is properly dismissed.

Plaintiff also claims that his transfer out of ICF was retaliatory. However, this claim is entirely conclusory. Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

Moreover, Plaintiff fails to allege facts showing that Defendant Doolittle had any part in his transfer. Even if Defendant Doolittle had made retaliatory statements to Plaintiff, those statements would not be evidence of retaliation if she was not the decisionmaker taking the alleged adverse action. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999). Therefore, the Court will dismiss Plaintiff's retaliation claims against Defendant Doolittle for lack of merit.

**VI.    Pending motions**

Plaintiff has filed a motion to amend his complaint (ECF No. 6) seeking to add the attached notarized verification that the matters asserted in his complaint are true.  Plaintiff's motion will be granted and Plaintiff's notarized verification will be considered as part of the complaint.

Plaintiff has also filed a motion for appointment of counsel (ECF No. 3).  Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993).  The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances.  In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606.  The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position.  Plaintiff's request for appointment of counsel will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Davids will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, Plaintiff's retaliation claims against Defendant Doolittle.  Plaintiff's Eighth Amendment claims against Defendants Coleman, Papendick, McIntyer, Blessman, Huyge, and Doolittle remain in the case.

An order consistent with this opinion will be entered.

Dated:   August 14, 2020             /s/ Robert J. Jonker
                                                  ROBERT J. JONKER
                                                  CHIEF UNITED STATES DISTRICT JUDGE