UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWIGHT HILL,

                Plaintiff,

v.

RICKEY J. COLEMAN, *et al.*,

                Defendants.

_____/

Case No. 1:20-cv-542

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Dwight Hill, a state prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on defendants Dr. Carmen McIntyre, Dr. James Blessman, and RN Nicole Doolittle's motion for summary judgment for failing to exhaust administrative remedies (ECF No. 47).

### I.    Background

Plaintiff is currently incarcerated at the MDOC's Marquette Branch Prison (MBP). However, the events about which plaintiff complains occurred at the MDOC's Ionia Correctional Facility (ICF). Plaintiff alleged that defendants violated his Eighth Amendment rights by denying plaintiff treatment and out-patient surgery to remove hemorrhoids. His complaint involves incidents which occurred at various times from September 2018 through December 2019. *See* Opinion (ECF No. 9, PageID.182-187). The complaint set forth two incidents involving defendants Dr. McIntyre, Dr. Blessman, and RN Doolittle.

1

First, on October 9, 2019, plaintiff sent defendants Dr. Coleman, Dr. Papendick, Dr. McIntyre, and Dr. Blessman "requests for out-patient surgery (Hemorrhopidectomy) [sic]), requests for wet-wipes detail renewal, pictures of the size and growth rate of hemorrhoids, [and] Notice of intent to file a complaint."   Compl. (ECF No. 1, PageID.5).

Second, on November 22, 2019, RN Doolittle assaulted plaintiff, caused plaintiff pain, sexually harassed plaintiff, and humiliated plaintiff when she (1) used dry gauze and "pressed hard" to wipe away blood from his burst hemorrhoid, and (2) gave plaintiff incontinence pads after observing that plaintiff was on the toilet with bleeding hemorrhoids telling plaintiff "I will give you some pads so you can plug up your butt hole."   *Id*. at PageID.5-6.

## II.    Defendant's motion for summary judgment

### A.    Legal standard for summary judgment

Defendants seek summary judgment because plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

2

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).    "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."   *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Failure to Exhaust

### 1.    Exhaustion requirement

The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 "or any other Federal law" must first exhaust available administrative remedies. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).   A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.   One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.   This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).   In order to properly exhaust administrative remedies,

3

prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. Finally, even if a prisoner complies with the grievance procedures, the grievance must give fair notice of the misconduct or mistreatment as measured against the claim alleged in the prisoner's complaint. *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II

response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### 3.    Discussion

Based on plaintiff's MDOC Step III Grievance Report (ECF No. 48-3, PageID.341-344) and relevant grievances (ECF No. 48-3, PageID.345-421), defendants contend that plaintiff has not properly exhausted any grievances related to his claims asserted against Dr. McIntyre, Dr. Blessman, and RN Doolittle.

### a.    Dr. McIntyre and Dr. Blessman

Plaintiff alleged that on October 9, 2019, he requested wet wipes and out-patient surgery from Dr. McIntyre and Dr. Blessman.   Defendants point out that there is no record of a grievance related to that request.   In his response, plaintiff states that he exhausted his claims against Dr. McIntyre and Dr. Blessman when he filed a grievance on June 13, 2019, ICF-19-06-0932-28A ("932").

This grievance related to a "Notice of Intent" which plaintiff sent to the doctors April 17, 2019, "pleading for wet-wipes detail and out-patient hemorrhoid-surgery."   Grievance 932 (ECF No. 48-3, PageID.367).   However, plaintiff's complaint does not allege that he sent a "Notice of Intent" to Dr. McIntyre or Dr. Blessman on that date.   In this regard, the only allegation which refers to April 2019 is as follows, "4-8-19 The plaintiff sent repeated healthcare kites .   .   . requests for wet-wipes, out-patient surgery (Hemorrhoidectomy), [sic]".   In addition, this grievance filed in June 2019 did not exhaust the alleged incident which did not occur until four months later in October 2019.   Furthermore, defendants point out that Grievance 932 was not properly exhausted.   This grievance was rejected at Step I because it was a duplicate of another

grievance that had been processed.   Grievance 932 (ECF No. 48-3, PageID.368).   The MDOC

upheld the rejection of Grievance 932 at Steps II and III.   *Id*. at PageID.364, 366.

Based on this record, plaintiff did not properly exhaust a grievance against

defendants Dr. McIntyre and Dr. Blessman for failing to provide wet wipes and out-patient surgery

as requested on October 9, 2019.   *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

Accordingly, their motion for summary judgment should be granted.

### b.      RN Doolittle

Defendant RN Doolittle points out that plaintiff pursued two grievances against her,

Grievance ICF-19-12-2029-28i ("2029") and "ICF-12-2030-12e3/28e", both of which were

rejected. As an initial matter, the second grievance is mis-cited in defendants' brief. *See*

Defendants' Brief (ECF No. 48, PageID.319,324) According to the exhibit, this is actually

Grievance ICF-19-12-2030-12e3 (ECF No. 48-3, PageID.346), which the MDOC later re-

classified as ICF-19-12-2030-28e ("2030") (ECF No. 48-3, PageID.345).

### Grievance 2029

In Grievance 2029, plaintiff claimed that RN Doolittle sexually harassed and

humiliated him by "manipulating" a medical provider to give plaintiff a detail for incontinence

pads.   Grievance 2029 (ECF No. 48-3, PageID.354).   Plaintiff stated that he suffers from

hemorrhoids, not incontinence, and that RN Doolittle sexually harassed him "by associating me

[sic] bleed from hemorrhoids with women bleeding from being on periods & needing a pad to stop

blood."   *Id*.   Plaintiff stated that he needed wet wipes.   *Id*.   The MDOC rejected Grievance 2029

because plaintiff did not attempt to resolve the issue with the staff member before filing the

grievance.  *Id*. at PageID.355.   The MDOC upheld the rejection at Steps II and III.   *Id*. at PageID.351, 353.

Plaintiff contends that there is a question of fact with respect to the rejection, *i.e.*, that plaintiff could not meet with RN Doolittle because he was in segregation.   According to plaintiff, he filed a PREA (Prisoner Rape Elimination Act) complaint on RN Doolittle for sexual assault and sexual harassment on November 22, 2019, he received a response on the PREA claim on December 2, 2021, and he filed Grievance 2029 on December 3, 2021.   Plaintiff's Aff. (ECF No. 55, PageID.473).[1]   Plaintiff further states,

> By this time RN Doolittle had been separated from me while my claims of sexual assault had been investigated and it is for this reason which is <u>out of my control</u> that I could not talk with RN Doolittle to resolve our issues.   I was moved to another unit and transferred to another facility on 1-7-20.

*Id*. (emphasis in original).   In their reply, defendants state that,

> Even if Hill and Doolittle were separated during the PREA investigation, Hill could have contacted Doolittle after his PREA grievances were rejected. Moreover, Hill did not raise the issue that he was prevented from resolving the issue with Doolittle in either his Step I grievance (ECF No. 48-3, PageID.354) or his Step II appeal (ECF No. 48-3, PageID.352), both of which he filed after he had filed PREA grievances against Doolittle. Hill's failure to raise this issue means that MDOC was unable to evaluate, during the grievance process, whether Hill should have been excused from his failure to resolve the issue with Doolittle prior to filing his Step I grievance.

Reply (ECF No. 60, PageID.508).

The resolution process is set out in Policy Directive 03.02-130 ¶Q which states,

> Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs. If the issue is not resolved, the grievant may file a Step I grievance. The Step I

---

[1] The Court notes that plaintiff's "affidavit" is actually an unsworn declaration pursuant to 28 U.S.C. § 1746..

grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.

Assuming that plaintiff was prevented from meeting with RN Doolittle, then he should have addressed this in the Step I grievance form, which asks the grievant, "What attempt did you make to resolve this issue prior to writing this grievance?   On what date?   If none, explain why."   Here, plaintiff responded,

> 11-23-19.   I wrote a PREA complaint/grievance on RN Dootlittle.   I received a response on 12-3-19 saying I need to file a new grievance in accordance with PD.03.02.130.   So here I am.   This grievance should not be considered late (See PREA Rejection)[.]

Grievance 2029 (ECF No. 48-3, PageID.354).   In the Court's opinion, filing a Prison Rape Elimination Act complaint against RN Doolittle was not an attempt "to resolve the issue with the staff member."   Furthermore, plaintiff did not contest the basis for the rejection in the Step II appeal. Rather, he restated his claim:

> This grievant maintains that he was sexually harassed by RN Doolittle when <u>she</u> wrote out a detail for TENA-MENS Protective Gaurds [sic] (incontinence pads[)].   This was done to humiliate & degrade me.   These men pads do nonething [sic]   to stop the bleeding.   They do nonething to stop the swelling and if they come into contact with a hemorrhoid they increase my pain. The only purpose was to shame me and compare me to a female who needs a pad while on her period. These pads cost 15.00 a pack – while we-wipes something I need cost 2.50[.] Just waistfull [sic].

*Id*. at PageID.352. Similarly, plaintiff did not address the reason for rejection in his Step III appeal. *Id*.

Based on this record, plaintiff has failed to properly exhaust Grievance 2029 against defendant RN Doolittle.   *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, her motion for summary judgment should be granted with respect to this grievance.

**Grievance 2030**

In Grievance 2030, plaintiff claimed that on November 22, 2019, RN Doolittle assaulted him by pressing dry gauze against his burst hemorrhoid and wiping it, rather than patting the hemorrhoid and using wet gauze.   Grievance 2030 at PageID.348. According to plaintiff, when RN Tribble heard that plaintiff was in pain from the procedure and "asked RN Doolittle if she needed the spray on pain reliever . . . Doolittle said no and waived her away."   *Id*.   According to plaintiff, this established that RN Doolittle "wanted me in pain."   *Id*.

The grievance was denied at Step II and rejected at Step III as untimely.   *Id*. at PageID.345, 347.   In denying the Step II appeal on January 22, 2020, the respondent noted that plaintiff was now housed at MBP.   *Id*. at PageID.347.   The Step III appeal was rejected as untimely because it was received on February 28, 2020.   The rejection explained that "[w]hile providing a grace period for standard mail; the grievance however was still not received in a suitable timeframe after the due date of February 6, 2020."   *Id*. at PageID.345.

In his response, plaintiff states that he was transferred to MBP during the middle of the exhaustion process for Grievance 2030.   Plaintiff's Response (ECF No. 54, PageID.435). Plaintiff contends that there was good cause for the delay in filing the Step III appeal because, "[m]ail from ICF did not reach me for 3-4 weeks and this was the fault of the MDOC."   Hill Aff. at PageID.473.   Plaintiff's conclusory statement is insufficient to create a genuine issue of material fact.   While plaintiff filed a record that he arrived at MBP on January 8, 2020 (*see* Initial Classification, ECF No. 54-3, PageID.462), he neither presented evidence that his ICF mail was "3-4 weeks late" nor gave any specific statement on that issue.   "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."   *F.T.C. v. PublishingClearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir.

1997) (as amended April 11, 1997).  *See Gill v. Suburban Cadillac of Lansing, LLC*, No. 1:18-cv-676, 2020 WL 207199 at *4 (W.D. Mich. Jan. 14, 2020) ("Conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact and are insufficient to withstand a motion for summary judgment") (internal quotation marks omitted).

In this regard, plaintiff's Step III appeal did not explain a mail delay or seek to be excused for the untimely filing.   Rather, plaintiff's Step III appeal stated that:

> This grievant maintains that I was assaulted by RN Doolittle. . . . who hid her assault in the form of a hemorrhoid evaluation. . . . she cause me more pain than I started with.   I asked for camera footage at Step 1 and 2 but footage was not reviewed.

Grievance 2030 at PageID.346 (ellipses in original).

Based on this record, plaintiff has failed to properly exhaust Grievance 2030 against defendant RN Doolittle.   *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant Doolittle's motion for summary judgment should be granted.

## III.    Recommendation

For the reasons set forth above, I respectfully recommend that defendants Dr. McIntyre, Dr. Blessman, and RN Doolittle's motion for summary judgment based on failure to exhaust (ECF No. 47) be **GRANTED** and that these three defendants be **DISMISSED**.

Dated:  July 8, 2021                                  /s/ Ray Kent
                                                      Ray Kent
                                                      United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).