UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWIGHT HILL,

                Plaintiff,

v.

RICKEY J. COLEMAN,
*et al.*,

                Defendants.

                                /

Case No. 1:20-cv-542

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Dwight Hill ("Hill"), a state prisoner in the custody of the Michigan Department of Corrections (MDOC). Hill filed this action on June 15, 2020.  Compl. (ECF No. 1).  Three defendants remain, Dr. Rickey Coleman, Dr. Keith Papendick, and PA David Huyge.  This matter is now before the Court on defendants Coleman, Papendick, and Huyge's motion for summary judgment (ECF No. 86).

### I.       Hill's complaint

Hill is currently incarcerated at the Marquette Branch Prison (MBP).  However, the events in this lawsuit occurred before his transfer to MBP.   Hill alleged that defendants violated his Eighth Amendment rights by denying him treatment and out-patient surgery to remove hemorrhoids. His complaint involves incidents which occurred at various times from September 2018 through December 2019. *See* Opinion (ECF No. 9, PageID.182-187).  Hill alleged that his wet wipes detail was discontinued at some point and that defendants Dr. Coleman, Dr. Papendick, and PA Huyge have all denied his requests to renew the detail.  *Id*. at PageID.176.  Hill alleged that on November 29, 2018, Dr. Coleman denied a request by (non-party) PA Jindal to renew his

wet wipes detail, despite the fact that the directions on the Preparation H state that the area should be cleaned with a wet wipe prior to application of the product. *Id*. Hill also sent requests for wet wipes and for surgery to Dr. Coleman and Dr. Papendick on October 9, 2019, but received no response. *Id.* at PageID.176-177.

With respect to surgery, Hill alleged that on September 6, 2018, Dr. Papendick denied his request for out-patient surgery to remove the hemorrhoids. *Id*. at PageID.177. Hill alleged that on September 2, 2019, his hemorrhoids bled so heavily that he was taken to the emergency room. *Id*. Dr. Mary A. Greiner recommended that Hill have a hemorrhoidectomy, but Dr. Papendick denied the request for surgery. *Id*.

Hill was transferred to MBP on January 7, 2020. Medical Records (ECF No. 86-1, PageID.780). At Hill's first provider visit at MBP on August 5, 2020, Hill stated that he was filing a lawsuit (as discussed, Hill had already filed this lawsuit). The medical provider observed three thrombosed hemorrhoids. *Id*. at PageID.784. On September 11, 2020, Hill was scheduled for a surgical consultation. *Id*. at PageID.785. Hill had a hemorrhoidectomy on December 15, 2020 in Escanaba, Michigan. Surgical Record (ECF No. 94-3, PageID.863).

## II.     Defendants' motion for summary judgment

### A.     Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the Court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.      Dr. Papendick

### 1.      Exhaustion requirement

Dr. Papendick contends that Hill failed to exhaust any grievances against him.  The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the

3

state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.  Finally, even if a prisoner complies with the grievance procedures, the grievance must give fair notice of the misconduct or mistreatment as measured against the claim alleged in the prisoner's complaint.  *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances.  *See* Policy Directive 03.02.130 (effective March 18, 2019).[1]  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ Q and S.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where,

---

[1] As discussed, *infra*, the only relevant grievance was filed on June 13, 2019.

why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original).  The prisoner must send the Step I grievance to the appropriate

grievance coordinator.  *Id.* at ¶ W.  If the prisoner is dissatisfied with the Step I response, or does

not receive a timely response, he must request the appropriate form and send it to the Step II

Grievance Coordinator.  *Id.* at ¶ DD.  Finally, if a prisoner is dissatisfied with the Step II response,

or does not receive a timely response, he must send a completed Step III grievance, using the

appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ HH.

### 3.  Discussion

Dr. Papendick identified 12 grievances which Hill filed from October 28, 2018,

through December 3, 2019, and noted that Hill did not name him in any of these grievances.

Defendants' Brief (ECF No. 86, PageID.707-708).[2]  In his response Hill states that he exhausted

his administrative remedies against Dr. Papendick in Grievance ICF-1906-0932-28A ("932"),

dated June 13, 2019, with an incident date of June 10, 2019.  Plaintiff's Response (ECF No. 94,

PageID.828); Defendants' Reply (ECF No. 95, PageID.865); Grievance 932 (ECF No. 48-3,

PageID.364-369).

Contrary to Hill's claim, this grievance was explicitly directed at Dr. Blessman and

Dr. McIntyre, and did not name Dr. Papendick.  *Id*. at PageID.367.  At Step II, Hill attempted to

"amend" the grievance to include Dr. Papendick and Dr. Coleman.  This is contrary to Policy

Directive 03.02.130 ¶ S, which requires that all parties grieved must be named at Step I.  Hill's

claims against Dr. Papendick are not properly exhausted because he did not identify the "names of

all those involved in the issue being grieved."  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324

---

[2] Dr. Papendick did not submit copies of these grievances.  However, the MDOC defendants previously filed a copy of Hill's Step IIII Grievance Report with their motion for summary judgment (ECF No. 48-3).

(6th Cir. 2010) (observing that a grievance which fails to identify the person being grieved at Step I, as required by the MDOC, fails to properly exhaust administrative remedies under the PLRA). Based on this record, plaintiff did not properly exhaust a grievance against defendant Dr. Papendick. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, Dr. Papendick's motion for summary judgment should be granted for lack of exhaustion.

### C.    Eighth Amendment claims

### 1.    Legal Standard

Hill seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the 8th Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable 8th Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id*. at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an 8th Amendment violation. *Id*. at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734, F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

## 2. Discussion

### a. Dr. Coleman

Dr. Coleman's involvement in this case involves a request for wet wipes in 2018, before plaintiff was transferred to Ionia Correctional Facility (ICF). At all times relevant to Hill's complaint, Dr. Coleman was the Inpatient Medical Director of Utilization Management at the MDOC. Dr. Coleman Aff. (ECF No. 86-3, PageID.789). Coleman is not involved in the day-to-day medical care of inmates. *Id*. Rather, his involvement with inmate care includes evaluation of

7

requests for nonformulary medications requests, as well as nonformulary medical details and special accommodations.  *Id*. at PageID.789-790).  In performing his duties, Coleman reviews a medical provider's ACMO [Assistant Chief Medical Officer] request and, based on his review of the patient's medical presentation and in the exercise of his informed medical judgment, he makes recommendations regarding the appropriate course of treatment.  *Id*. at PageID.790.  His recommendation may approve a request, request additional information, or recommend an alternative treatment plan.  *Id*.

On July 26, 2018, (non-party) PA Rosilyn Jindal, a medical provider at Gus Harrison Correctional Facility (ARF),[3] submitted a renewal detail of wet wipes.  *Id*.  Dr. Coleman reviewed and deferred the request because no medical evidence was submitted with the request to warrant a renewed detail.  *See* ACMO Review (renewal request for wet wipes deferred because "nothing presented to support the request") Medical Records at PageID.730.

On November 29, 2018, PA Jindal submitted another request for baby wipes. Coleman Aff. at PageID.90.  At the time, PA Jindal requested baby wipes because Hill had "thrombosed hemorrhoids, one size of a pea, and other size of a grape.  Has tried Tucks, Preparation H and suppositories without improvement."  Medical Records at PageID.736. On January 15, 2019 (about one week before Hill's transfer to ICF) Dr. Coleman reviewed and deferred the request because there was no medical indication for baby wipes.  *Id.*; Coleman Aff. at PageID.90.

There is no question that Hill had problems during this time period.  Notes from a provider visit on September 6, 2018, indicate that Hill had a history of external hemorrhoids for more than 10 years, which bleed on and off.  Medical Record at PageID.731.  The medical provider

---

[3] *See* Medical Record at PageID.729.

noted external hemorrhoids making a ring around Hill's anus, tender and enlarged, none appear to be thrombosed. *Id*. at PageID.733. The provider ordered Preparation H topical cream to apply around the rectum and general surgery to evaluate the external hemorrhoids for removal. *Id*. The request for surgery was denied because the criteria was not met. *Id*. at PageID.734. The reviewer comments stated, "Medical Necessity not demonstrated at this time. What are ADL deficits or risk to life or limb?" *Id*.

On December 11, 2018, while the second request was pending, Hill presented to health care reporting "popping a hemorrhoid and bleeding." Medical Records at PageID.735. The notes continued reflected external hemorrhoids, large and clustered, no blood seen, that Hill was given Preparation H and education on alleviating hemorrhoid pain discomfort. *Id*.

The issue before the Court is whether Dr. Coleman's denial of baby wipes amounted to deliberate indifference to a serious medical need. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks omitted). Based on this record, Hill was receiving medical treatment for his hemorrhoids.

There is no evidence that Dr. Coleman exhibited obduracy or wantonness in treating Hill, or exhibited a mental state equivalent to criminal recklessness. *See Whitley*, 475 U.S. at 319; *Santiago*, 734 F.3d at 591. While PA Jindal wanted to treat Hill with baby wipes, Dr. Coleman's disagreement with that course of treatment does not rise to the level of a federal constitutional claim. Differences of opinion between prison doctors does not show deliberate indifference but "suggest, at most, a difference in medical opinion, which is not actionable under § 1983." *Lane v.*

9

*Wexford Health Sources (Contreator)*, 510 Fed. Appx. 385, 388 (6th Cir. 2013). Assuming that Hill sent Dr. Coleman a direct request for wet wipes on or about October 9, 2019, Hill's disagreement with the treatment he has received, or a desire for additional or different treatment, does not support an Eighth Amendment claim. *Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018). "[A] patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017). Accordingly, Dr. Coleman's motion for summary judgment should be granted.

### 2.    PA Huyge

Hill's claims against PA Huyge involve his treatment at ICF in 2019. PA Huyge treated Hill from January 24, 2019, through December 13, 2019. PA Huyge Aff. (ECF No. 86-4).[4] On January 24, 2019, Huyge performed a chart update when Hill arrived, and noted that Hill had a history of benign prostatic hyperplasia (BPH) (a noncancerous enlargement of the prostate gland) and hemorrhoids. *Id*. at PageID.793. On March 1, 2019, Huyge conducted a chart review and prescribed Hill Preparation H cream for the hemorrhoids. *Id*. At that time, Huyge determined that "Preparation H wipes" were not indicated. *Id*.

Huyge examined Hill at a scheduled provider visit on April 11, 2019. Huyge summarized the substance of the visit as follows:

> Mr. Hill again asked for wet wipes to clean his hemorrhoid after having bowel movements. Mr. Hill mentioned he is using Preparation H cream, which is helping with the occasional pain and itching. He requests that a camera come in the evening every night to capture a photo of the hemorrhoids when they allegedly flare. I examined the hemorrhoids and noted Mr. Hill has two (2) non-tender hemorrhoids approximately one (I) centimeter in diameter at 3 o'clock and 6 o'clock. These hemorrhoids had no induration, erythema, violaceous coloration. They were not thrombosed and there was no heme, visible tear or ulcerations, stool, or odor.   I had a lengthy conversation with Mr, Hill regarding hemorrhoid

---

[4] Hill transferred to ICF on or about January 22, 2019. Medical Records at PageID.738.

management, and informed Mr, Hill that wipes are not indicated. I placed an order
to refill Preparation H and informed him to follow up as scheduled or sooner if
needed.

*Id*.

Between April and August, 2019, Hill did not complain of any hemorrhoid flareups

and did not submit any kites for wet wipes.  *Id*.

Huyge examined Hill at a scheduled provider visit on August 12, 2019.  Huyge

summarized the substance of the visit as follows:

On August 12, 2019, Mr. Hill presented to me for a scheduled provider visit.
Mr . Hill expressed his frustrations with the healthcare staff, feeling like he needs
hemorrhoid surgery. He did not request wet wipes at this visit. He instead described
having flare ups only in the evening after having a bowel movement. <u>When asked
if the hemorrhoids could be examined today, Mr. Hill refused. He complained of
some constipation but also refused my offer for a stool softener.</u> I informed Mr. Hill
that his hemorrhoid issue is mild, not warranting surgery or special wipes. Mr. Hill
was to continue his current treatment regimen and follow up next year, or sooner,
as needed.

*Id*. at PageID.793-794 (emphasis added).

Hill alleged that on September 2, 2019, his hemorrhoids bled so heavily that he was

taken to the emergency room.  Opinion at PageID.177.  Medical records reflect that one of his

hemorrhoids ruptured on that date.  PA Simon ordered Hill to the hospital emergency department

by state car.  Medical Record at PageID.766.  Hill submitted a copy of a medical record from

Sparrow Hospital which indicate that he arrived at the hospital around 2:01 p.m. Hill reported that

a prison nurse examined him, found three large external hemorrhoids, and felt one that had

ruptured.  Hospital Record (ECF No. 94-3, PageID.864).  A medical provider at the hospital

examined the hemorrhoids at about 2:18 p.m., and Hill was discharged at 3:32 p.m.  *Id*.  Hill

returned to the prison at about 5:05 p.m.  A prison nurse reported that the hospital sprayed Hill's

hemorrhoids with lidocaine 4% external solution and suggested that he be placed on a stool

11

softener.  Medical Records at PageID.768.  Hill was encouraged to drink more water and placed on callout the following morning.  *Id*.

When a nurse visited for the follow-up on September 3, 2019, Hill declined to leave his cell, stating "I need to see a Doctor there is nothing you can do for me."  *Id*. at PageID.769. Hill was instructed to increase fiber and water intake and not to strain during bowel movements. *Id*.

On October 3, 2019, Hill sent a kite requesting a change in his stool softener complaining that Senna is not working effectively.  Huyge Aff. at PageID.794.  Upon being informed of the complaint, PA Huyge changed the stool softener to Hill's requested brand, Colace. *Id*.

On December 10, 2019, RN Julie Fletcher saw Hill, at which time he requested an increase in Preparation H cream.  *Id*.  Upon being informed of the request, PA Huyge doubled the amount of cream for him to receive per month on December 13, 2019.  *Id*.  Huyge had no further involvement with Hill because the prisoner was transferred to MBP on January 7, 2020.  *Id*.  PA Huyge's affidavit is consistent with Hill's medical record.  *See* Medical Record (ECF No. 86-1).

Based on this record, PA Huyge provided Hill with medical treatment for his hemorrhoids.  *See Graham ex rel. Estate of Graham*, 358 F.3d at 385.  There is no evidence that Huyge exhibited obduracy or wantonness in treating plaintiff, nor exhibited a mental state equivalent to criminal recklessness. *See Whitley*, 475 U.S. at 319; *Santiago*, 734 F.3d at 591. Furthermore, Hill refused medical treatment both before and after his hemorrhoid ruptured.  On August 12, 2019, a few weeks before the rupture, Hill complained of hemorrhoid problems but did not agree to an examination of his hemorrhoids.  Hill also refused a stool softener.  Medical Records at PageID.762.  In addition, Hill declined to leave his cell when a nurse arrived for a

12

follow-up visit on September 3, 2019.  *Id.* at PageID.769.  Hill's voluntary refusals of medical treatment precludes an Eighth Amendment claim for deliberate indifference to a serious medical need.  *See Palmer v. Wagner*, 3 Fed. Appx. 329, 331 (6th Cir. 2001).  Accordingly, PA Huyge's motion for summary judgment should be granted.

## IV.    Recommendation

Accordingly, I respectfully recommend that defendants Dr. Coleman, Dr. Papendick, and PA Huyge's motion for summary judgment (ECF No. 86) be **GRANTED** and that this action be **TERMINATED**.

Dated:  February 2, 2022                          /s/ Ray Kent
                                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).